United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued November 13, 2000 Decided December 15, 2000 

 No. 00-3004

 United States of America, 
 Appellee

 v.

 Tony Angelo Mason, 
 Appellant

 Appeal from the United States District Court 
 for the District of Columbia 
 (No. 99cr00162-01)

 Edward H. Rippey, appointed by the court, argued the 
cause for appellant. With him on the briefs was Mark H. 
Lynch.

 Kenneth W. Cowgill, Assistant U.S. Attorney, argued the 
cause for appellee. With him on the brief were Wilma A. 
Lewis, U.S. Attorney, John R. Fisher, Mary-Patrice Brown 
and John D. Crabb, Jr., Assistant U.S. Attorneys.

 Before: Edwards, Chief Judge, Williams and Tatel, 
Circuit Judges.

 Opinion for the Court filed by Chief Judge Edwards.

 Edwards, Chief Judge: Tony Angelo Mason appeals his 
conviction under 18 U.S.C. s 922(g)(1) (1994). During his 
trial, Mason testified that he found a gun in a paper bag near 
a school while he was working as a delivery truck driver. He 
claimed that he took possession of the gun only to keep it out 
of the reach of the young children at the school, fully intend-
ing to give the weapon to a police officer whom he expected to 
see later that day on his truck delivery route. A law enforce-
ment officer discovered the gun in Mason's possession, how-
ever, before Mason acted on his own to relinquish possession. 
Mason was then arrested and subsequently indicted for a 
violation of s 922(g)(1), which makes it unlawful for any 
person who has been convicted of a crime punishable by 
imprisonment for a term exceeding one year to possess a 
firearm or ammunition.

 At the conclusion of his trial, Mason asked the District 
Court to instruct the jury that "innocent possession" was a 
defense to the crime charged under s 922(g)(1). The trial 
judge denied the request, instructing the jury instead that 
"well meaning possession" was not a defense to the 
s 922(g)(1) charge. The trial judge instructed the jury that, 
so long as he "knowingly possessed" the gun, it did not 
matter why Mason had the weapon in his possession. The 
jury then returned a verdict of guilty and Mason was subse-
quently sentenced to 77 months in federal prison.

 Mason's principal argument on appeal is that the District 
Court erred in refusing to give an "innocent possession" 
instruction. The Government concedes that, in certain cir-
cumstances, innocent possession may be a defense to a 
charge under s 922(g)(1). The Government argues, however, 
that such a defense could not succeed on the record in this 
case.

 We agree that, in appropriate circumstances, a defense of 
innocent possession may be asserted in a criminal prosecu-

tion that rests on a charged violation of s 922(g)(1). We also 
find that, in the instant case, the District Court erred in 
refusing to give an innocent possession instruction. Accord-
ingly, we hereby reverse the judgment of the District Court 
and remand the case for a new trial.

 I. Background

 On April 13, 1999, the day of his arrest, Mason was driving 
a truck and delivering drinking water for his employer, Snow 
Valley. Mason testified that, after making a delivery to a 
housing development at 69 L Place, N.W., Washington, D.C., 
and as he was returning to his truck, he came upon a brown 
paper bag on the ground and found a gun with ammunition in 
it. Trial Transcript at 19 (Aug. 27, 1999) [hereinafter "Tr. 
8/27"]. He picked up the bag and took it with him to his 
truck. He then took the gun out of the bag, tucked the 
weapon into the side of his weight belt, and put the ammuni-
tion in his pocket. Tr. 8/27 at 19. Mason testified further 
that he picked up the gun "because it was in an area where 
there is the school there and there were a lot of children 
outside." Tr. 8/27 at 20. According to Mason, he proceeded 
to the Library of Congress, which was his next water delivery 
stop, where he intended to turn over the gun to a Library of 
Congress police officer he knew. Tr. 8/27 at 20-21.

 Bobby Henson, a uniformed Library of Congress police 
officer, was stationed at the entrance gate adjoining a loading 
dock in the Library of Congress building when Mason drove 
his Snow Valley truck into the loading dock area. Having 
seen Mason before, but not being able to recall Mason's 
name, Officer Henson testified that he motioned for Mason to 
stop so that he could record his name in the log. Trial 
Transcript at 10 (Aug. 26, 1999) [hereinafter "Tr. 8/26"]. 
Mason testified that he thought the officer was waving him 
on, so he did not stop. Tr. 8/27 at 22. After parking his 
truck and unloading several bottles of water, Mason contin-
ued on towards the dock master's desk, where he signed in 
before entering the Library of Congress. Tr. 8/27 at 25.

 Officer Patrick J. Curtis, Jr., who was stationed at a metal 
detector approximately ten to fifteen feet away from the dock 
master's desk, testified that Mason walked by him on his way 
to the dock master's desk. Tr. 8/26 at 27-28, 31. When 
Mason leaned over the desk to sign in, Officer Curtis ob-
served what he believed to be the butt of a handgun protrud-
ing from Mason's waistband. Tr. 8/26 at 32. Officer Curtis 
then approached Mason, visually confirmed that Mason was 
carrying a gun, and then ordered Mason to put his hands on 
the table in front of him. Officer Curtis detained Mason at 
gun point and removed the gun from Mason's waistband. Tr. 
8/26 at 34. Mason was subsequently arrested.

 On May 13, 1999, a federal grand jury indicted Mason on 
one count of unlawful possession of a firearm and ammunition 
by a person convicted of a crime punishable by imprisonment 
for a term exceeding one year, in violation of 18 U.S.C. 
s 922(g)(1). See Indictment, United States v. Mason, Crim. 
No. 99-0162 (D.D.C. May 13, 1999), reprinted in Appellant's 
Appendix ("App.") at 4. A superceding indictment was filed 
on August 24, 1999. See Superceding Indictment, Mason, 
Crim. No. 99-0162 (D.D.C. Aug. 24, 1999), reprinted in App. 
at 10.

 During Mason's trial on the s 922(g)(1) charge, the prose-
cutor asked the trial judge to preclude the defense from 
trying to introduce evidence that Mason was justified in 
possessing the gun. Tr. 8/26 at 116. The prosecutor argued 
that, pursuant to authorities such as United States v. Perrin, 
45 F.3d 869 (4th Cir. 1995), the so-called "justification" de-
fense to a felon-in-possession charge under s 922(g)(1) is 
available only when (1) the felon or someone else was under 
an unlawful and present threat of death or serious bodily 
injury; (2) the felon did not recklessly place himself in the 
situation where he would be forced to engage in criminal 
conduct; (3) the felon had no reasonable legal alternative that 
would avoid both the criminal conduct and the threatened 
death or injury; and (4) there was a direct causal relationship 
between the criminal act and the avoidance of the threatened 
harm. Id. at 873-74. Defense counsel objected on two 
grounds: first, counsel argued that the Government's motion 

was premature, because Mason had yet to present any evi-
dence; second, counsel asserted that Mason intended to rely 
on an "innocent possession" defense, not the "justification" 
defense. Tr. 8/26 at 116-17. In asserting the innocent 
possession defense, Mason's counsel directed the District 
Court's attention to Criminal Jury Instructions, District of 
Columbia, No. 4.71(B) (4th ed. 1993) ("Redbook"), and to D.C. 
Court of Appeals decisions, such as Carey v. United States, 
377 A.2d 40, 42-44 (D.C. 1977), and Hines v. United States, 
326 A.2d 247, 248 (D.C. 1974), and unspecified federal circuit 
opinions, purporting to apply the innocent possession stan-
dard. Tr. 8/26 at 117, 119-20.

 The District Court denied the Government's motion to 
preclude the "justification" defense, finding the motion pre-
mature. Tr. 8/26 at 122. On the following day of trial, 
Mason then testified, as noted above, that he possessed the 
weapon with innocent and good purpose. At the conclusion of 
the trial, Mason's counsel made an oral and a written request 
for an instruction on the defense of innocent possession. The 
proposed instruction was as follows:

 Mr. Mason would be not guilty of the offense charged 
 here if he lacked any criminal purpose in possessing the 
 weapon and/or ammunition and he possessed the weapon 
 in an affirmative effort to aid social policy for example: 
 1) to protect the finder or others from harm, 2) to turn it 
 over to the police, or 3) to otherwise secure it.
 
Mr. Mason's Additional Proposed Jury Instructions, reprinted 
in App. at 48. The District Court rejected the innocent 
possession instruction. Instead, over the objection of defense 
counsel, the trial judge instructed the jury as follows:

 If you find that the defendant knowingly possessed the 
 gun or ammunition, then the reason the defendant may 
 have had for possessing them is not relevant to your 
 consideration of the evidence. Well meaning possession 
 is not a defense to the charge in this case.
 
Tr. 8/27 at 103.

 The jury returned a guilty verdict against Mason. The 
District Court then sentenced Mason to 77 months in federal 

prison, followed by three years of supervised release. See 
Judgment, Mason, Crim. No. 99-0162 (D.D.C. Dec. 28, 1999), 
reprinted in App. at 52-53. Mason's sentence represented a 
two-level reduction in the adjusted offense level pursuant to 
United States Sentencing Guideline s 5K2.0. 
See United States v. Mason, 90 
F. Supp. 2d 1, 1 (D.D.C. 1999).

 Mason now appeals his conviction, challenging the District 
Court's failure to give an innocent possession instruction to 
the jury. He seeks reversal of the District Court's judgment 
and remand for a new trial.

 II. Analysis

 Both the Government and the defendant agree that there is 
a "justification" defense to a felon's possession of a gun in 
violation of s 922(g)(1). See, e.g., United States v. Dodd, 225 
F.3d 340 (3d Cir. 2000); United States v. Deleveaux, 205 F.3d 
1292 (11th Cir.), cert. denied, 120 S. Ct. 2724 (2000); United 
States v. Gomez, 92 F.3d 770 (9th Cir. 1996); Perrin, 45 F.3d 
869. The present case, however, does not implicate the 
justification defense, because there was no evidence of an 
imminent threat of death or bodily injury to Mason or others. 
See Deleveaux, 205 F.3d at 1297. The parties do not disagree 
over this point. Rather, the issue here is whether there is a 
distinct innocent possession defense, i.e., apart from the 
justification defense, to a felon-in-possession charge under 
s 922(g)(1), and, if so, how it should be defined.

 At oral argument, Government counsel forthrightly con-
ceded that, although narrow, there must be an innocent 
possession defense to a s 922(g)(1) charge. We agree. In-
deed, we cannot imagine otherwise. It is true that some 
courts have emphasized that no criminal intent is required to 
establish guilt under s 922(g)(1). See, e.g., Deleveaux, 205 
F.3d at 1298 (stating that under s 922(g)(1) "[t]he prosecution 
need show only that the defendant consciously possessed 
what he knew to be a firearm"). Nonetheless, as the Govern-
ment here recognized, to completely reject the possibility of 

an innocent possession defense is to say that a felon-in-
possession always will be guilty once he knowingly possesses 
a weapon, without regard to how or why he came into 
possession or for how long possession was retained. Thus, 
for example, if Mason did indeed innocently pick up a bag 
containing a gun (not knowing what was in the bag), he would 
be guilty the moment he was seen holding the bag knowing of 
its contents, even if he had every intention of relinquishing 
possession immediately. There is nothing to indicate that 
Congress intended such a harsh and absurd result and Gov-
ernment counsel acknowledged that s 922(g)(1) should not be 
read this broadly.

 The real problem in this case is not whether there is an 
innocent possession defense, but, rather, how to define it. 
This is no mean feat. Although Congress may not have 
meant to produce absurd results in enacting s 922(g)(1), 
there is no doubt that the criminal proscription is strict. 
Nonetheless, as both parties here agree, certain carefully 
confined extenuating circumstances may preclude a conviction 
under s 922(g)(1) based on mere knowing possession.

 Some of our sister circuits appear to have recognized an 
innocent possession defense; however, we can find no case in 
which a circuit has squarely applied the innocent possession 
defense to a s 922(g)(1) charge, where the elements of a 
justification defense are not present. See United States v. 
Ali, 63 F.3d 710, 716 n.7 (8th Cir. 1995) (declining to address 
whether the defense was available because defense counsel 
failed to seek a proper instruction on the innocent possession 
theory, but noting that its case law did not foreclose such a 
defense); United States v. Elder, 16 F.3d 733, 738 (7th Cir. 
1994) (concluding that although the innocent possession de-
fense presented a "novel issue," it need not decide the issue 
because the evidence did not support the defense); cf. United 
States v. Wolak, 923 F.2d 1193, 1198 (6th Cir. 1991) (recogniz-
ing an "innocent possession defense," though the defense in 
that case is more properly considered a "justification defense" 
as life and limb were arguably at stake).

 There are reported state court judgments, however, that 
have allowed an innocent possession defense to a weapons 
possession charge. See, e.g., Bieder v. United States, 707 
A.2d 781, 783-84 (D.C. 1998) (acknowledging innocent posses-
sion defense to charge of carrying a pistol without a license); 
People v. Hurtado, 54 Cal. Rptr. 2d 853, 858 (1996) (stating 
that the momentary possession for disposal defense, initially 
established for the possession of controlled substances, ex-
tends to possession of a firearm by a felon offenses); People 
v. Williams, 409 N.E.2d 1372, 1373 (N.Y. 1980) (recognizing 
innocent possession defense to a charge of criminal weapons 
possession). See also Redbook, Instruction No. 4.71(B) (4th 
ed. 1993) ("The defendant would be not guilty of the offense 
charged here if s/he lacked any criminal purpose in carrying 
or possessing the weapon [ammunition] and s/he [intended to 
take it as soon and as directly as possible to law enforce-
ment]."); Criminal Jury Instructions, New York, No. 9.65 
(1983) ("A person who recently finds a weapon and thus 
possesses it temporarily, with no intention to retain it, but 
with the intention of promptly turning it over to a lawful 
authority, is not guilty of unlawful possession. Such posses-
sion, if temporary, is lawful."). Some of the statutes at issue 
in the state court decisions are not felon-in-possession stat-
utes. Nevertheless, the rationale underlying these decisions 
seems to apply equally to s 922(g)(1).

 There are two general requirements that must be satisfied 
in order for a defendant to successfully invoke the innocent 
possession defense. The record must reveal that (1) the 
firearm was attained innocently and held with no illicit pur-
pose and (2) possession of the firearm was transitory--i.e., in 
light of the circumstances presented, there is a good basis to 
find that the defendant took adequate measures to rid himself 
of possession of the firearm as promptly as reasonably possi-
ble. In particular, "a defendant's actions must demonstrate 
both that he had the intent to turn the weapon over to the 
police and that he was pursuing such an intent with immedia-
cy and through a reasonable course of conduct." Logan v. 
United States, 402 A.2d 822, 827 (D.C. 1979). When these 

requirements are met, possession is "excused and justified as 
stemming from an affirmative effort to aid and enhance social 
policy underlying law enforcement." Hines v. United States, 
326 A.2d 247, 248 (D.C. 1974).

 The innocent possession defense may arise in a range of 
factual scenarios, including cases like the instant one in which 
the defendant's claims of innocent possession, lack of illicit 
purpose, and transitory possession are plausible, albeit debat-
able. Such cases are for the jury to decide. There are some 
easy cases on either end of the spectrum, however.

 For example, suppose there was undisputed and credible 
evidence that a defendant left his truck locked to make a 
delivery and, upon returning, found that the truck had been 
broken into and a gun left on the driver's seat. Suppose 
further that, surprised by his discovery, the defendant picks 
up the gun, removes the ammunition, and then immediately 
calls "911" to seek police assistance. When the police arrive, 
the defendant is found holding the gun and ammunition, 
which he turns over to the officers. Surely, with such a 
record, a judgment of acquittal would be in order.

 On the other hand, suppose that, upon finding the firearm, 
the hypothetical defendant promptly hides the gun and am-
munition in his truck. Assume further that the defendant 
finishes his deliveries and says nothing to anyone about the 
gun or ammunition. Then, at the end of his work day, the 
defendant puts the gun and ammunition in his jacket pocket 
and takes them to his home, purportedly to consider what to 
do with them. The gun and ammunition remain in the 
defendant's possession overnight. The firearm is accidentally 
discovered the next day when a police officer sees the gun fall 
out of the defendant's jacket pocket. In such a case, there 
would be no plausible innocent possession defense, because 
the defendant could not show transitory possession. In other 
words, there would be no basis whatsoever to find that the 
defendant took adequate measures to rid himself of posses-
sion of the firearm as promptly as reasonably possible. In 
such a case, a trial judge should reject a request for an 
innocent possession instruction.

 The innocent possession defense to a s 922(g)(1) charge is 
necessarily narrow. Thus, it does not offend the statute's 
goal of keeping guns out of the hands of convicted felons. 
See Barrett v. United States, 423 U.S. 212, 218 (1976) (noting 
that the purpose behind the statute is to "keep firearms away 
from the persons Congress classified as potentially irresponsi-
ble and dangerous"). On this score, it is important to recall 
that "it is the retention of [a firearm], rather than the brief 
possession for disposal ... , which poses the danger which is 
criminalized" by felon-in-possession statutes. Hurtado, 54 
Cal. Rptr. 2d at 858. With this in mind, it is easy to 
understand why the innocent possession defense--which fo-
cuses precisely on how the defendant came into possession of 
the gun, the length of time of possession, and the manner in 
which the defendant acts to rid himself of possession--is fully 
consistent with the legislative purpose underlying s 922(g)(1).

 The instant case presents a close call. The asserted facts 
indicate that Mason's possession of the gun and ammunition 
was innocent and that he harbored no illicit purpose; there is 
a question, however, as to whether Mason took the necessary 
steps to dispose of the gun with immediacy and through a 
reasonable course of conduct. On balance, we find that 
Mason established an adequate record to warrant submission 
of an innocent possession instruction to the jury. See Joy v. 
Bell Helicopter Textron, Inc., 999 F.2d 549, 556 (D.C. Cir. 
1993) ("It is well established that '[a] defendant is entitled to 
an instruction on a defense theory if it has a basis in the law 
and in the record.' ") (quoting Hasbrouck v. Texaco, Inc., 842 
F.2d 1034, 1044 (9th Cir. 1987), aff'd, 496 U.S. 543 (1990)).

 The testimony reflects that, once Mason found the weapon, 
he drove directly to deliver the weapon to an officer he knew 
who was only 10 minutes away; and he apparently made no 
attempt to hide the gun, which was seen sticking out of his 
belt. The Government, however, argues that Mason "did not 
embark upon a course of conduct reasonably calculated to 
result in the surrender of the pistol to police with immedia-
cy," see Appellee's Brief at 30, because Mason (1) did not call 
the police, even though he had a cellular telephone, and (2) 

did not surrender the weapon to the first police officer that he 
saw. This is precisely the kind of dispute that should be 
submitted to a jury. On remand, following a new trial, it will 
be up to the jury to assess the evidence and to determine 
whether, in light of the circumstances presented, Mason took 
adequate measures to rid himself of possession of the firearm 
as promptly as reasonably possible.

 III. Conclusion

 Because the District Court erred as a matter of law in not 
instructing the jury on Mason's innocent possession defense, 
Mason's conviction is reversed and the case is remanded for a 
new trial.